[No. 4450.]

F. T. BURKE AND LEN. HARRIS, PLAINTIFFS, v. WELLS, FARGO & CO., DEFENDANTS; A. J. STARLING AND E. CLAWSON, INTERVENERS.

REWARD FOR ARREST OF ROBBERS.—An offer, by a party who has been robbed, of a reward for the arrest and conviction of the robbers, is not earned by one who merely communicates to the party robbed his suspicions that a certain person is guilty, with a statement that others were satisfied of his guilt, and that circumstances pointed strongly towards him, and who does not claim the reward until after the arrest and conviction of the robbers.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

The defendants were a joint stock association doing an express business under the name by which they were sued. They were engaged in carrying treasure to and from the mines. On the 10th day of October, 1873, the stage was stopped by highwaymen near Buckeye, Shasta County, and the defendants' treasure-box was taken from the same and broken open and its contents stolen. The defendants offered the following reward:

"ONE THOUSAND DOLLARS REWARD.—A reward of two hundred and fifty dollars each will be paid for the arrest and conviction of the parties concerned in the robbery of our treasure-box near Buckeye, in Shasta County, on the morning of October 10, 1873, and one-fourth of the treasure recovered.

"WELLS, FARGO & CO."

The plaintiffs Burke and Harris brought this action to recover the reward. Wells, Fargo & Co. answered, admitting that the robbers had been arrested and convicted, and admitting that the reward was due, but alleging that Starling and Clawson also claimed the reward, and asking that they be required to interplead, and offering to bring the money into court. The money was deposited in court, and Starling and Clawson intervened, claiming one-half the

offered reward. On the trial Starling and Tracy were the only witnesses examined for the interveners.

The following facts were elicited: Starling was the agent of Wells, Fargo & Co. at Nord, in Butte County, on the line of the railroad, about eighty miles south of the place of the robbery. He heard of the reward offered on the 12th of October, and talked with Clawson, who was stopping at Nord. He and Clawson kept a lookout to see if suspicious characters passed Nord. On the 17th of October Clawson brought a man named Clark into the ticket-office at Nord to purchase a ticket; Clawson stood behind him and intimated to Starling that Clark was one of the men who had committed the robbery. After he had purchased a ticket to Sacramento, Clawson took Starling to the car and pointed out two other men and said the three were the men who committed the robbery. Starling then told Hatch, the conductor on the train, that the three men were the robbers, and wanted he should telegraph to him if they got off the train before it reached Sacramento. Hatch said the men got on at Vino, in Tehama County, which is between Nord and Buckeye. Starling then sent to Felix Tracy—Wells, Fargo & Co.'s agent at Sacramento—the dispatch contained in the opinion. Upon the receipt of the dispatch, Tracy took it to the plaintiff Burke. Burke informed Harris of it, and the two immediately left Sacramento for Lincoln, a station on the railroad about twenty miles north of Sacramento, and when the train arrived at Lincoln they arrested Clark and Thompson. They afterwards arrested Hayes at San Francisco, but he was probably on the train when they arrested the other two. Clark, Thompson and Hayes were convicted in February. Starling testified that he intended, when he gave the information, to claim a part of the reward for himself and Clawson, and that after the arrest and conviction he talked with Burke and Harris about allowing him and Clawson a part of the reward, but they refused to do so. It appeared that the robbers were old convicts and that Clawson also had been in the State Prison. This was the only explanation given of the reason why Clawson detected the robbers. When the testimony closed,

the court, on the motion of the plaintiffs, nonsuited the interveners, and they appealed.

*Burch & Griffith*, for the Appellants.

The person who gives the information on which an arrest is made is entitled to the reward offered for such arrest and conviction, even though he does nothing more.

This we understand to be the settled rule, and fully supported by the recent cases of *Besse* v. *Dyer*, 9 Allen (Mass.) 151; *Jenkins* v. *Kelron*, 12 Gray (Mass.) 330, where all the authorities are reviewed.

Two or more persons may perform acts which co-operate to secure the arrest of an offender, and if their several services are rendered in consideration of a reward offered for such arrest, and the acts are performed either by concert or are necessarily co-operative, a joint action accrues.

The well-considered case of *Janvrin* v. *The Town of Exeter* (48 N. H. 83; also reported in 2 Am. R. 188–9, and the authorities therein cited), as also the cases *supra* from Allen and Gray, and the cases referred to therein, fully support this position.

*G. W. Spaulding and N. Greene Curtis*, for the Respondents.

By the Court, McKINSTRY, J.:

Wells, Fargo & Co. having offered a reward for the "arrest and conviction" of the robbers of their treasure-box at Buckeye, Starling, one of the interveners, who was the acting agent of Wells, Fargo & Co. at Nord, telegraphed to their agent at Sacramento:

"A very suspicious character bought a ticket at this office this morning for Sacramento by train No. 12. There are parties here that know him, and say they are satisfied he was connected with the stage robbery north of Redding. He served one term in the State Prison. Circumstances point very strongly toward him. The conductor was posted on him. I am told that Mr. Len. Harris would recognize him."

Neither of the interveners performed any further act with reference to the arrest or conviction, nor does the transcript show that any notice was given Wells, Fargo & Co. that either of the interveners claimed any portion of the reward, until after the conviction of the robbers.

The right to recover a reward advertised must depend upon the particular circumstances of each case. The claimant must prove, however, that he has substantially performed the service proposed in the advertisement. (*Besse* v. *Dyer*, 9 Allen, 151.)

Our attention has been called to no case where it has been held that the communication to the party injured of the suspicions of the informant that a certain person was guilty, or a statement that others were satisfied of his guilt, and that "circumstances pointed strongly toward him," was of itself alone such substantial performance as earned the reward. In *Besse* v. *Dyer*, the plaintiff had not only given the defendant such information as had enabled the latter to recover the property stolen and to bring about the conviction of the thief, but had claimed the reward when he gave the information, and had indicated—as the court intimates —his readiness to assist further, and to assume any responsibility involved in his action.

The record does not distinctly show what information Starling had received in respect to a participation in the crime by the person whom he suspected. It sufficiently appears, however, that he did not rely upon his information and informer, to such an extent that he attempted personally to make the arrest, or to secure an officer to make it. The telegram cannot be said to indicate more than that Starling was desirous of discharging a moral duty which he owed his employers by placing before them his suspicions, so as to enable them, upon further inquiry, to determine whether they would proceed to the arrest. Starling did not take the responsibility of declaring that he had such information to communicate as would justify the arrest, nor does the case show that he or his co-intervener had such information.

It was said by the Vice Chancellor, in *The President of the*

*City Bank* v. *Bangs and Others* (2 Edw. Ch. R. 95): "The criterion for determining to whom the reward belongs is this: who is the person who has acquired a knowledge of the facts necessary to a detection or discovery of the thing stolen or lost, and has imparted such knowledge with the intent and for the purpose of bringing about a recovery or restoration of the property, taking upon himself the risks and consequences of a failure, and acting with a view to the reward, if his suspicions and disclosures are well founded and successful."

When the information imparted has reference to the guilty person only, a rule analogous to that above cited should obtain. In the case now before us the court below seems to have held that the communication by Starling was not made in view of the reward; that he only intended to communicate his suspicions to the agent at Sacramento, leaving him to act as he thought proper; that he did not intend to participate further in the matter, nor to assume any responsibility in case he was mistaken in the object of his suspicion. We cannot say the court erred in coming to this conclusion, and we think the conclusion accords with the judgment.

Judgment and order affirmed.